UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-106-MOC

| LUIZ SANHUEZA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 18). Pro se Plaintiff Luiz Sanhueza has filed a response, and the matter is ripe for disposition. For the following reasons, the Court grant's Defendant's motion.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff began receiving disability insurance benefits on September 11, 1989. On November 18, 2013, the Social Security Administration (Agency) issued a notice informing Plaintiff that he was overpaid Title II benefits from February 2012 through October 2013. (Tr. 15, 73–76). Plaintiff also had a previous period of overpayment, from February 2009 through September 2009, (Tr. 15, 63–66), which had not yet been resolved at the time of his second overpayment.

On April 13, 2014, Plaintiff requested waiver of the overpayment, stating that he was not at fault in causing the second overpayment. He did this in a typewritten letter and it does not appear that he filed an SSA Form 632 (Request for Overpayment Recovery). (Tr. 15, 86–87). Plaintiff seemed to acknowledge his responsibility for repaying the earlier overpayment from

1

2009. On that same date, Plaintiff filed a request for reconsideration, SSA Form 561 (Tr. 15, 86), in both the form and the letter, he requested an "Informal Conference." Plaintiff did not dispute the fact of either overpayment or the amount. (Id.).

On May 14, 2014, Plaintiff's reconsideration request was dismissed because although he stated that the repayment would constitute a "hardship" for him, he did not dispute the fact that he was at fault for the overpayment, which was set at that time at $29,240.00. Also, Plaintiff did not question the amount of the overpayment. (Tr. 15, 88–89).

On October 15, 2014, Plaintiff's request for a waiver was acknowledged and he was invited to submit additional financial information to support his request for a waiver. He was advised that the information requested must be received by the Agency no later than November 14, 2014. (Tr. 15–16, 92–93). It does not appear from the record that Plaintiff ever responded to this request for additional information to support his request for a waiver.

On July 27, 2017, Plaintiff was advised of the balance of his overpayment for the second period of disability of $27,185.00. (Tr. 94–98). Thereafter, Plaintiff filed a written request for hearing on August 22, 2017. (Tr. 98). See 20 C.F.R. § 404.929 et seq.

In a letter dated September 14, 2017, the Agency informed Plaintiff that his request for a hearing was untimely filed, because it had come more than 60 days after the 2014 notice of dismissal. (Tr. 99–101). Plaintiff contacted the Charlotte hearing office Chief Administrative Law Judge to dispute the Agency's contention that his request was not filed in a timely fashion and highlighted some of the confusing correspondence that he had received. (Tr. 102–03).

Considering this a sufficient explanation for why the request for hearing had not been filed until August 22, 2017, Plaintiff's case was scheduled for a hearing on March 26, 2019, and Plaintiff was provided a Notice of Hearing on December 12, 2018. (Tr. 108–113, 114–119).

2

Plaintiff appeared and testified at a hearing held on March 26, 2019, in Charlotte, North Carolina. His wife, Lorie Sanhueza, also appeared and testified at the hearing. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. (Tr. 23–53, 120–124). On May 24, 2019, the ALJ found that Plaintiff was liable for the overpayment and recovery of the overpayment was not waived. (Tr. 9–21).

The Appeals Council denied review, making the ALJ's decision Defendant's final administrative decision. (Tr. 1–6). Plaintiff now seeks review of that decision in this Court pursuant to 42 U.S.C. § 405(g).[1]

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

On review, this Court is asked to decide whether substantial evidence supports Defendant's factual findings and whether Defendant applied the correct legal standards. See 42 U.S.C. § 405(g); Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the

---

[1] Plaintiff's pro se Complaint alleges that Defendant was "negligent" for not stopping his social security payments and for overpaying him, and he seeks waiver of overpayment.

3

threshold for such evidentiary sufficiency is not high. Substantial evidence, th[e] [Supreme] Court has said, is more than a mere scintilla." Id. (citations and internal quotation marks omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citations and internal quotation marks omitted).

"The amount of an overpayment or underpayment is the difference between the amount paid to the beneficiary and the amount of the payment to which the beneficiary was actually entitled." 20 C.F.R. § 404.504. In keeping with section 204(b) of the Social Security Act, 42 U.S.C. § 404(b), "there shall be no adjustment or recovery in any case where an overpayment under title II has been made to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience." 20 C.F.R. § 404.506(a). Fault, as in without fault, "applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. "What constitutes fault . . . depends upon whether the facts show that the incorrect payment . . . resulted from," among other things, the individual's "acceptance of a payment which he either knew or could have been expected to know was incorrect." Id.

**IV. Discussion**

The Court finds that substantial evidence supports the ALJ's decision and the ALJ applied the correct legal standards in reaching his decision. Specifically, substantial evidence supports the ALJ's waiver decision; and Plaintiff's arguments regarding the fact and amount of his overpayment lack merit.

4

The ALJ found in his May 24, 2019, decision that Plaintiff was overpaid benefits in the total amount of $29,240.00 during the periods from February 2009 through September 2009 and February 2012 through October 2013. (Tr. 17). The ALJ explained that Plaintiff was originally awarded benefits with an established onset date of August 11, 1989. He subsequently returned to work with earnings that reached the regulatory threshold for substantial gainful activity, and had a trial work period. His benefits ended as of November 2008. However, thereafter he had to stop working, and his benefits resumed, because he was still within his extended period of eligibility. (Tr. 17).

The ALJ further noted, and the record reflects, that Plaintiff was out of work for only a short period, and subsequently resumed working in 2009; that his extended period of eligibility ended thereafter; and that although he had scant earnings in 2010 and 2011, he had robust earnings in 2012, and has continued to have earnings well in excess of the regulatory threshold for substantial gainful activity every year since. (Tr. 17, 126–130). The ALJ noted that on November 18, 2013, Plaintiff was notified that the reinstatement of his benefits was suspended, because he once again had earnings that exceeded the regulatory threshold for substantial gainful activity. (Tr. 17, 78-83). Plaintiff concedes that he owes Defendant some money for an overpayment. (Tr. 30-34). An overpayment occurs when a benefits recipient receives an amount in excess of the amount due. 20 C.F.R. § 404.501(a). The Act requires the Commissioner to recover overpayments. 42 U.S.C. § 404(b); see also 20 C.F.R. § 404.502. There is no dispute that Plaintiff was paid more than the correct amount, thereby incurring an overpayment.

Substantial evidence also supports the ALJ's waiver decision. It is uncontested that Plaintiff did not satisfy the requirement for waiver of recovery, as he has not shown that he was without fault in causing the overpayment. The ALJ found that Plaintiff was at fault in causing the

overpayment.[2] (Tr. 18-19). The ALJ noted that during the hearing Plaintiff's wife, Lorie Sanhueza, testified first, explaining that every time Plaintiff received mail from the Agency, he replied. She said that when Plaintiff started back to work, he continued to receive disability payments from the Agency. She said she and Plaintiff contacted the Agency to tell them to stop the payments, but they continued. The ALJ noted that Mrs. Sanhueza acknowledged that she and Plaintiff understood they were not supposed to be receiving the payments, but said, "[t]hey kept sending the checks." Mrs. Sanhueza said that after receiving the correspondence from the Agency in either 2013 or 2014, they understood that Plaintiff was no longer eligible for disability, and should not have been receiving the payments. She said she did not recall receiving any notification that Plaintiff was overpaid, until after all the payments had been received. (Tr. 18, 23–53).

At the hearing, the ALJ asked Mrs. Sanhueza if they knew that Plaintiff should not be receiving the disability payments while he was working, why she and her husband had not taken steps to set the money received aside. The record shows that Mrs. Sanhueza testified that, "[w]e didn't think about that; we were trying to get them stopped; they had paid tax on the additional money the claimant was getting; and they thought they knew what they were doing." (Tr. 18, 23–53).

---

[2] At the outset, the ALJ noted that although the Agency provided Plaintiff with correspondence in Spanish, he appeared proficient in English. The ALJ noted that the file contained several letters and handwritten forms, all containing fluent and detailed explanations of Plaintiff's views. The ALJ noted that Plaintiff did not require a translator at the hearing, although his wife testified to most of the details of the circumstances surrounding the overpayment; that Plaintiff's own testimony was brief, but in clear and understandable English; and Plaintiff did not appear to have any problems understanding the questions that were posed to him, and his answers were responsive and unambiguous. The ALJ properly found that there is no evidence that a language barrier caused a misunderstanding on Plaintiff's part regarding his duty to report his work, or in his communication with Agency staff regarding the overpayments. (Tr. 18, 23–53).

6

The ALJ asked Plaintiff and his wife whether he had received the SSA Form 632 (Request for Waiver) and Plaintiff replied that he thought he had received the form, but did not send it back. (Tr. 18, 23–53). When asked why he did not send it back, Plaintiff said it was asking about his "personal business" such as how much money he had in the bank, that he thought this was an overreach, and that he believed he did not need to submit that information. (Id.). The ALJ acknowledged several disconnects in communication, which included Plaintiff's handwritten letter of September 2017. (Tr. 18, 99-100). The ALJ noted that Plaintiff acknowledged that he was aware of the requirement to report his work activity. He and his wife insisted he did so every time they received correspondence and that he had previously provided copies of his time sheets and salary. Plaintiff also acknowledged his responsibility to repay at least the previous overpayment in 2009. Indeed, the ALJ noted that according to his correspondence in April 2013, Plaintiff requested the Agency deduct 10% from his current monthly benefit check to repay the older overpayment. (Tr. 18–19).

The ALJ found it inconsistent with the record evidence as a whole for Plaintiff to argue the overpayment is not his fault, when the evidence shows he acknowledged his responsibility to repay the 2009 overpayment in his April 2013 letter, and admitted he was currently being overpaid again because he was currently (and wrongfully) receiving benefits even though he had returned to work. Further, the evidence shows that in his April 2013 letter, Plaintiff asked the Agency to deduct the first overpayment from the disability benefits he was still receiving although he was working, thereby creating a second period of overpayment. (Tr. 19).

Additionally, the ALJ noted that Mrs. Sanhueza testified they had reported to the Agency that Plaintiff was working, and that certainly by the time his benefits were stopped in November 2013, they understood that Plaintiff should not have been receiving the benefits. The ALJ noted

7

that when asked why they had spent the money that they knew they were not entitled to, instead of putting it aside, neither Plaintiff nor his wife could offer a satisfactory explanation for their actions. (Tr. 19, 23–53). See 20 C.F.R. § 404.507 (stating that "[w]hat constitutes fault . . . depends upon whether the facts show that the incorrect payment . . . resulted from," among other things, the individual's "acceptance of a payment which he either knew or could have been expected to know was incorrect"). See Califano v. Yamasaki, 442 U.S. 682, 696–97 (1979) ("As the Secretary's regulations make clear, 'fault' depends on an evaluation of "all pertinent circumstances" including the recipient's 'intelligence . . . and physical and mental condition' as well as his good faith. 20 CFR § 404.507 (1978).").

Substantial evidence supports the ALJ's finding and Plaintiff does not argue that he satisfies the requirements for waiver. Under the circumstances, the ALJ properly found that Plaintiff is "at fault" for the overpayment. (Id.).

Even if the ALJ were to accept Plaintiff's assertions that the communication difficulties were entirely outside of his control, and that he was without fault in creating the overpayment, it would not be appropriate to waive the overpayment. There are two circumstances when consideration of waiver of an overpayment is appropriate. The ALJ noted that if Plaintiff is considered to be without fault, the ALJ must decide whether recovery of the overpayment would defeat the purpose of Title II of the Act. (Tr. 19–20). Adjustment or recovery will defeat the purpose of the Act where the claimant needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses. Ordinary and necessary expenses include: fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits), taxes, installment payments,

etc.; medical, hospitalization, and other similar expenses; expenses for the support of others for whom the claimant is legally responsible; and other miscellaneous expenses which may reasonably be considered as part of the claimant's standard of living. 20 C.F.R. § 404.508(a) and (b)).

Next, if Plaintiff is found to be without fault, the ALJ must also consider whether recovery of an overpayment is against equity and good conscience under Title II of the Act. Recovery of the overpayment is against equity and good conscience if the claimant changed his position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself or was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment. The claimant's financial circumstances are not material to considering whether recovery of an overpayment is against equity and good conscience. 20 C.F.R. § 404.509.

Based on a thorough review of the evidence of record and Plaintiff's testimony, the ALJ properly found that recovery would not defeat the purpose of the Act. The ALJ noted that Plaintiff made it clear that he does not think his financial situation is any of the Agency's "business," and so he has not provided any evidence that he needs substantially his current income (including social security monthly benefits) to meet his current ordinary and necessary living expenses. (Tr. 19). The ALJ opined that because Plaintiff refused to cooperate in this determination, it would not be possible to determine precisely the exact amount he was currently spending on "his ordinary and necessary living expenses." Moreover, the ALJ noted that in each year since 2012, Plaintiff's earnings exceeded $50,000.

Specifically, the earnings record reflects that at the time of the first overpayment, Plaintiff had earnings of $22,005.32 in 2008 and $48,604.05 in 2009. He had minimal

9

Case 3:20-cv-00106-MOC    Document 22    Filed 09/16/21    Page 9 of 11

earnings of $415.80 in 2010 and $1,027.56 in 2011. In 2012, he had earnings of $60,029.80; he subsequently had earnings of $58,504.76 in 2013; $71,609.06 in 2014; $77,608.13 in 2015; and $97,568.62 in 2016. In both 2017 and 2018, his earnings were over $100,000: he had earnings of $110,692.97 in 2017, and $112,962.60 in 2018 (Tr. 20, 126–30, 131–32). Based on this underlying information, the ALJ found it untenable for Plaintiff to establish he would need substantially all of his current income to meet his current ordinary and necessary living expenses, to such a degree that he could not reimburse the funds that he received in error. (Tr. 20).

Further, the ALJ also found that recovery of the overpayment would not be against equity and good conscience, nothing that Plaintiff admitted he received the overpayment. (Tr. 20, 23–53). The ALJ also found that Plaintiff had not offered any evidence that he either changed his position for the worse or relinquished a valuable right because of the overpayments. (Id.). Thus, the ALJ properly found that recovery of the overpayment was not waived, and that Plaintiff was liable for the total repayment of $29,240.00 received during the periods from February 2009 through September 2009 ($2,000.00) and February 2012 through October 2013 ($27,400.00) (Tr. 20). See 204(a)(1)(A) of the Act; 20 C.F.R. § 404.506.

Substantial evidence supports the ALJ's findings that the waiver request filed and the subsequent hearing request regarding the overpayment of $29,240.00 is not waived and Plaintiff is liable pursuant to 204(a)(1)(A) of the Act; 20 C.F.R. § 404.506.

## V. Conclusion

The Court has carefully reviewed the record and finds that the decision of the ALJ is supported by substantial evidence, and Plaintiff is therefore liable for an overpayment of $29,240.00. Thus, Defendant's summary judgment motion is granted.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, is **AFFIRMED**;

(2) The Commissioner's Motion for Summary Judgment, (Doc. No. 18) is **GRANTED**, Plaintiff is liable pursuant to 204(a)(1)(A) of the Act for an overpayment of $29,240.00, and Plaintiff's Complaint is dismissed.

Signed: September 16, 2021

Max O. Cogburn Jr
United States District Judge